**Laurie A. WALMSLEY**

v.

**William S. BRADY, et al.**

**Civ. A. No. 90–0419 P.**

United States District Court,
D. Rhode Island.

June 22, 1992.

James P. Marusak, Gidley, Lovegreen & Sarli, Providence, R.I., for plaintiff.

Michael E. Civittolo, Providence, R.I., for defendants Bruce Palumbo, Astro Motors, Inc., Astro Plating Works Co., Astro Plating Corp.

Kenneth P. Borden, Higgins, Cavanagh & Cooney, Providence, R.I., for defendants Joan Falvey, Liberty Chevrolet, Liberty Motors, Inc.

James A. Currier, McOsker, Isserlis, Davignon & Waldman, Providence, R.I., for defendant William Brady.

**MEMORANDUM & ORDER**

PETTINE, Senior District Judge.

Defendants in the above-captioned case have requested that the jury be specifically

instructed regarding plaintiff's duty to mitigate damages arising from her lost earning capacity. The state courts of Rhode Island have not previously addressed the precise legal questions raised by defendants' request. Federal courts are, of course, required to apply state common law principles. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Often, in the absence of prior state law, federal courts certify such previously unaddressed legal questions to the state supreme court for solution. However, this Court must decide immediately whether or not to give a jury instruction on damage mitigation in the case at bar; thus, I must attempt to divine what the Rhode Island Supreme Court would do in such a situation.

## I.

The underlying basis for the litigation requires only brief comment. During the morning rush hour on September 15, 1987, the plaintiff was driving her truck on Route 195 West in Providence, Rhode Island. Plaintiff claims that while proceeding safely along, she was struck serially from behind by the three defendant-operated vehicles directly behind hers. Plaintiff alleges that she sustained serious, permanent injuries as a result of these collisions, which she claims were caused by each defendant's negligence.

Defendants have argued that plaintiff, a veterinarian, has failed to mitigate the damages of lost earning capacity she allegedly sustained from this accident. According to defendants, plaintiff can practice veterinary medicine in a modified form, without performing extensive amounts of surgery, or by serving as an administrative veterinarian in charge of an animal clinic. Plaintiff contends that she trained for, and had always intended to pursue, a surgery-intensive career in equine medicine. Further, plaintiff argues that because her disability has foreclosed her ability to pursue her chosen career path, she is entitled to compensation for lost earnings regardless of her potential earnings in a field she would not have entered but for the accident.

## II.

There are no published Rhode Island cases dealing with this precise issue; namely, does a plaintiff's duty to mitigate damages require her to accept a job in an area other than that which she has trained and planned for? The law of other states supports this Court's view that the plaintiff is entitled to compensation for lost earnings if she can no longer pursue her chosen field of labor, i.e. equine medicine, including surgery.

The plaintiff in *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), sustained burn injuries from a guy wire which left him with only one usable arm. Defendant argued that, by not accepting employment other than the job he had previously held, he had failed to mitigate his damages. However, the West Virginia supreme court felt differently:

> Before the accident, [plaintiff] was a strong, able-bodied laborer with a grade school education and an IQ in the low 80's. Now [plaintiff] has a grade school education, an IQ in the low 80's, but has only one arm and no longer can do heavy manual labor. Yet [defendant] claims that [plaintiff] could have obtained other employment after he was laid off ... but that he did not attempt to do so. Perhaps [plaintiff] should have looked for work as a door stop in Southern California? We think not.

*Id.* 406 S.E.2d at 708.

Courts in other jurisdictions also follow the precept that a disabled plaintiff is entitled to lost earnings compensation when he or she is rendered incapable of following his or her chosen career path. Indeed, in Michigan, Iowa, Pennsylvania and Tennessee to name a few states, the fact that actual earnings do not diminish is not dispositive of the issue of earning capacity. A plaintiff may recover for lost earning capacity even where he or she made more money after the accident than before. *See Draisma v. U.S.*, 492 F.Supp. 1317 (D.C.Mich.1980); *Raney v. Honeywell, Inc.*, 540 F.2d 932 (Iowa 1976); *Heckman*

*v. Federal Press Co.,* 587 F.2d 612 (3rd Cir.1978); and *Thompson v. National R.R. Passenger Corp.,* 621 F.2d 814 (6th Cir. 1980).

While it may be true that Dr. Walmsley's career as a veterinarian of some sort is not ended, it may be just as true that she no longer can practice the variety of veterinary medicine for which she has been trained. It would not be unreasonable for a jury to decide that a physician has a right to practice in the particular field of medicine he or she has chosen, as opposed to practicing in *any* field of medicine.[1] The jury in this case must be entrusted with the ultimate decision regarding this plaintiff's entitlement to lost earnings compensation.

Accordingly, this Court shall instruct the jury, in essence, as follows:

> As to loss of earnings, if you find the defendants liable, the plaintiff is entitled to recover for such loss of earnings as have resulted from her inability to work because of the injuries sustained. Therefore, in awarding damages, if any, you may consider the extent to which the plaintiff has proved loss of earnings resulting from her inability to work because of the injuries sustained, and the extent to which she has proved that she will lose earnings in the future resulting from her inability to work as a consequence of having sustained such injuries. Loss of earnings relates to the field in which the plaintiff was trained. If she can no longer practice in the specialized field in which she had planned to practice, you must then inquire and determine whether or not such a deprivation has resulted in a loss of earning capacity when juxtaposed against what she can do now as a veterinarian. The plaintiff is not required to mitigate damages to such an extent as to alter her professional career path to an unreasonable degree. As to reasonableness, the plaintiff is not required to accept alternative employment even though she could earn more money in said employment, provided that the higher paying job is unreasonably different from her chosen occupation.

SO ORDERED.

---

**1.** An analogy can be drawn to damage mitigation requirements under Title VII of the Civil Rights Act of 1964. When an employee is wrongfully terminated or denied promotion in violation of Title VII, she is obliged to mitigate damages (if possible) by seeking employment "substantially equivalent" to the position she had previously held or sought.

> "Substantially equivalent employment" is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status ... [i]f the former employee cannot find substantially equivalent employment, he may "lower his sights" and accept noncomparable employment. Title VII, however, "does not require that a person remain employed despite dissatisfaction."

*Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527 (11th Cir.1991) (citing *Sellers v. Delgado Community College,* 839 F.2d 1132, 1138 (5th Cir.1988); *EEOC v. Guardian Pools, Inc.,* 828 F.2d 1507, 1511 (11th Cir.1987)). While the instant case is premised not on Title VII, but on personal injury and negligence, I feel a damage mitigation analogy is not inappropriate.