# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: M.G., W.G., and C.G.**

**No. 13-1001** (Wood County 12-JA-179, 12-JA-180, and 12-JA-181)

**FILED**

March 31, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, by counsel Reggie Bailey, appeals the Circuit Court of Wood County's September 11, 2013, order terminating his custodial and guardianship rights to M.G., W.G., and C.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. Respondent Mother J.S., by counsel Debra Steed, filed a response in support of the circuit court's order.[2] The guardian ad litem, Lora Snodgrass, filed a response on behalf of the children also supporting the circuit court's order. On appeal, Petitioner Father alleges that the circuit court erred in: admitting improper lay person testimony, adjudicating the children as abused and neglected, admitting improper cross-examination, allowing three expert rebuttal witnesses, denying his motion for a post-adjudicatory improvement period, terminating his custodial rights, and limiting him to supervised post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 19, 2012, a Child Protective Service ("CPS") worker investigated Petitioner Father's home following an allegation that he lacked proper parenting skills or motivation that affected the safety of the children. This referral was unsubstantiated, but CPS initiated an in-home safety plan that Petitioner Father refused. Several days later, CPS workers returned to Petitioner Father's home to investigate unexplained marks on the children.

In December of 2012, CPS workers went to Petitioner Father's house and observed him sleeping while the children were unattended. A CPS worker also observed that the children were wearing dirty diapers, appeared to be hungry, and indicated that the home smelled like urine and

---

[1] Petitioner Father does not challenge the termination of his guardianship rights in his brief. Therefore, this appeal will only address the termination of Petitioner Father's custodial rights to M.G., W.G., and C.G.

[2] J.S. ("the mother") is the biological mother of the children. The circuit court awarded the mother legal and physical custody of the children.

feces. Additionally, Kimberly Carson witnessed Petitioner Father use inappropriate language in front of the children.[3]

Following these incidents, the DHHR filed a petition for emergency custody against Petitioner Father. The petition alleged that Petitioner Father abused and neglected the children through physical and emotional abuse, educational neglect, medical neglect, unsanitary living conditions, and failing to provide adequate supervision and nutrition. By order entered on December 11, 2012, the circuit court granted the mother temporary legal and physical custody of the children.

The circuit court held an adjudicatory hearing on March 12, 2013, which was continued to June 5, 2013, to allow the parties to present further evidence. During the adjudicatory hearings, the circuit court heard testimony from four JCDC workers, two school employees, Petitioner Father's therapist, two licensed psychologists, and a behavioral consultant. Additionally, testimony was provided by Petitioner Father and the children's mother. By order entered on August 8, 2013, the circuit court found that Petitioner Father emotionally and physically abused the children.

In September of 2013, the circuit court held a dispositional hearing and heard additional testimony from Petitioner Father and another service provider. After considering the evidence, the circuit court terminated Petitioner Father's custodial and guardianship rights. The circuit court found that Petitioner Father failed to correct the conditions that led to the filing of the petition. The circuit court also determined that Petitioner Father was unable to exercise proper parenting skills and was incapable of improving his parenting skills due to his mental and emotional illness. It is from this order that Petitioner Father now appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]Ms. Carson works for the Jackson County Development Center ("JCDC"). The JCDC provides Petitioner Father with services to help him cope with the difficulties of raising his children. All of Petitioner Father's children were diagnosed with Autism.

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, Petitioner Father raises eight assignments of error. First, Petitioner Father contends that the circuit court erred in allowing the testimony of the JCDC worker, Samantha Nokleby. Specifically, Petitioner Father argues that Ms. Nokleby should not have been allowed to testify about the children's injuries or bruising because she did not have specialized training in evaluating injuries or bruises.

Rule 701 of the *West Virginia Rules of Evidence* provides the following:

If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

This Court has held the following with respect to lay testimony:

In order for a lay witness to give opinion testimony pursuant to Rule 701 of the *West Virginia Rules of Evidence* (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue.

Syl. Pt. 2, *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), modified on other grounds by *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003).

A review of the record before us indicates that Ms. Nokleby's testimony was not expert in nature, but was rather simply lay opinion testimony under Rule 701 of the West Virginia Rules of Evidence. At the adjudicatory hearing, Ms. Nokleby provided testimony regarding the bruises she personally observed on the children while she was providing services to Petitioner Father and the children. Ms. Nokleby testified that she filled out bruise reports almost daily and that the children had bruises all over their bodies, sometimes resembling fingerprints. Ms. Nokleby did not require any medical or scientific expertise to testify to this, as the testimony was rationally based on her own observations. For these reasons, the circuit court did not abuse its discretion in admitting the testimony of Ms. Nokleby.

Next, the Court finds that the circuit court did not err in finding that the children were abused and neglected. Three of Petitioner Father's assignments of error concern these findings and will be addressed together. Petitioner Father alleges that the circuit court erred in finding that petitioner exercised physical abuse or excessive corporal punishment, the home was unclean, and nutritional neglect existed to support the findings of abuse and neglect. We have previously held that

"W.Va.Code[§] 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the

3

petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 3, *In re Randy H.,* 220 W.Va. 122, 640 S.E.2d 185 (2006).

We find no error in regard to the circuit court's findings of abuse and neglect. While Petitioner Father argues that the evidence was insufficient to support the circuit court's findings of abuse and neglect because the evidence below was conflicting and inconsistent, we disagree. Specifically, the circuit court heard evidence that Ms. Nokleby observed Petitioner Father grab W.G. by the arm and shake him, which resulted in a long scratch on W.G.'s arm and a welt on his elbow. The circuit court also heard testimony from two others who noticed bruising on the children's bodies. Other witnesses testified that Petitioner Father's home smelled like urine and feces, Petitioner Father kept his medicine within the reach of the children, and dirty diapers where piled up in the trash can. Finally, the circuit court heard testimony that the children were not being fed a properly balanced diet.

We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, we note that the circuit court was in the best position to assess witness credibility, and we find no error in the findings of abuse and neglect to the children at issue. Further, we decline to grant petitioner relief in this regard because of the overwhelming evidence supporting the circuit court's finding of abuse and neglect.

Next, Petitioner Father complains that the circuit court impermissibly permitted the opposing parties to elicit testimony and evidence on cross-examination from Rebecca Riales, a licensed professional therapist and Petitioner Father's counselor, regarding her diagnosis and treatment of Petitioner Father.[4] On direct examination, Ms. Riales testified about Petitioner Father's disciplinary techniques and that in her opinion, Petitioner Father was "a conscientious and responsible dad." During cross-examination, Ms. Riales was questioned about her training in providing counseling to individuals whose children have been diagnosed with Autism, the basis for her conclusion, and Petitioner Father's specific treatment. The DHHR also inquired as to whether Ms. Riales conducted an independent investigation or additional testing in forming her opinion about Petitioner Father's parenting abilities.

We have previously held that

> "The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard."

---

[4]Ms. Riales provided counseling to Petitioner Father for approximately two years.

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Upon our review, we find that the cross-examination of Ms. Riales was proper. Rule 611(b)(2) of the West Virginia Rules of Evidence states that the cross-examination of a non-party witness "should be limited to the subject matter of the direct examination and matters affecting the credibility . . . ." As stated above, Ms. Riales testified on direct examination that Petitioner Father was "a conscientious and responsible dad." Ms. Riales's opinion "opened the door" to questioning as to how she reached her opinion. Questions relating to the basis of her opinion are directly related to the subject matter of her direct examination pursuant to Rule 611(b)(2) of the West Virginia Rules of Evidence. Therefore, we find no abuse of discretion in the circuit court's decision to allow the cross-examination of Ms. Riales.

Next, Petitioner Father argues that the circuit court erred in allowing three expert witnesses to rebut Ms. Riales's lay witness testimony. More specifically, Petitioner Father argues that they should not have been allowed to testify regarding Petitioner Father's parenting because it exceeded the scope of Ms. Riales direct examination. The circuit court heard rebuttal testimony from John Atkinson, a licensed clinical psychologist. Mr. Atkinson testified that Petitioner Father did not have "the capacity to provide a calm, stable environment for [the] children." The circuit court also heard testimony from Amy Guthrie, a licensed psychologist, and Carol Newland, a behavior consultant, that Petitioner Father has failed to implement strategies to help the proper development of his autistic children. This testimony was proper to challenge Ms. Riales's opinion that Petitioner Father was "a conscientious and responsible dad." Further, Petitioner Father failed to cite to any case law or other authority to suggest that expert witnesses could not rebut the opinion of a lay witness. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991). For these reasons, we find that the circuit court did not error in admitting the expert testimony.

In his seventh assignment of error, Petitioner Father alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In support of this argument, Petitioner Father testified that he wanted services and worked with service providers to remedy the alleged conditions of abuse and neglect. Petitioner Father also testified that he would not refuse any services. Upon our review, the Court finds no error in the circuit court's decision to deny Petitioner Father a post-adjudicatory improvement period. West Virginia Code § 49-6-12(b)(2) grants circuit courts discretion in granting post-adjudicatory improvement periods upon a showing that the parent will fully participate in the same. The record in this matter supports the circuit court's denial because of Petitioner Father's failure to show, by clear and convincing evidence, that he would fully comply with the terms of a post-adjudicatory improvement period.

While it is true that Petitioner Father testified that he wanted services and allowed the JCDC to conduct services in his home, the record also shows that Petitioner Father failed to implement the skills he was learning. Expert witness and behavior consultant Ms. Newland testified that she began working with Petitioner Father in January of 2011, but terminated her services in August of 2011, due to non-compliance. Specifically, Ms. Newland testified that Petitioner Father failed to decrease the use of diapers in the home, increase the use of non-verbal

language, increase the children's use of silverware, and increase the children's desire to wear appropriate clothing. Ms. Newland also testified that Petitioner Father did not attempt to get the children to "take medication by mouth." These factors illustrate Petitioner Father's failure to show that he was likely to fully participate with the terms of his improvement period, and support the circuit court's denial of Petitioner Father's motion for a post-adjudicatory improvement period. We have previously held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights . . . ." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)). For these reasons, the Court finds no error in the denial of Petitioner Father's motion for a post-adjudicatory improvement period.

Finally, Petitioner Father argues that the circuit court erred in terminating his custodial rights and limiting his post-termination visitation with the children to supervised visitation. The record indicates that the circuit court was presented with sufficient evidence that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. Although the DHHR provided services to Petitioner Father for approximately eight months, Petitioner Father failed to respond to the services. Additionally, psychologist Ms. Guthrie testified that it would be difficult for Petitioner Father to parent his children because of his mental diagnosis.

Pursuant to West Virginia Code § § 49-6-5(b)(3) and (6), these conditions constitute situations in which there is no reasonable likelihood that the parent can substantially correct the conditions of abuse or neglect in the near future, which the circuit court found in this matter. The circuit court further found that termination of petitioner's custodial rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are instructed to terminate custodial rights upon these findings. Upon our review, we also find no error with the circuit court's directions concerning Petitioner Father's post-termination visitation. After terminating custodial rights, a circuit court may grant post-termination visitation if it considers that such a relationship is in the children's best interests and if it would not unreasonably interfere with their permanent placement. *See State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996). The circuit court's termination order with directions for post-termination visitation reflects these considerations.

For the foregoing reasons, we find no error in the decision of the circuit court and the September 11, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: March 31, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II