# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 16-0531** (Randolph County 15-F-53)

**Donald A. Johnson,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Donald A. Johnson, by counsel Rebecca A. Judy, appeals the Sentencing Order entered by the Circuit Court of Randolph County on May 5, 2016, following petitioner's convictions of two counts of soliciting a minor via computer, one count of distribution and display of obscene matter to a minor, one count of use of obscene matter with the intent to seduce a minor, and one count of possession of material depicting a minor engaged in sexually explicit conduct. Respondent State of West Virginia, by counsel Nic Dalton, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

In June of 2015, petitioner was indicted on two counts of soliciting a minor via computer in violation of West Virginia Code § 61-3C-14(b) (Counts 1 and 2); one count of distribution and display of obscene matter to a minor, in violation of West Virginia Code § 61-8A-2(a) (Count 3); one count of use of obscene matter with intent to seduce a minor, in violation of West Virginia Code § 61-8A-4 (Count 4); one count of possession of material depicting a minor engaged in sexually explicit conduct, in violation of West Virginia Code § 61-8C-3 (Count 5); and thirteen counts of attempted possession of material depicting a minor engaged in sexually explicit conduct.[1] At the time of the offenses, petitioner was employed as a high school librarian in

---

[1] Two of the thirteen counts of attempted possession of material depicting a minor engaged in sexually explicit conduct were dismissed, and petitioner was acquitted of the other eleven counts.

1

Randolph County. The victim in Counts 1 through 4 was S.M.,[2] who was a fifteen-year-old female student at the high school where petitioner was employed.

The matter proceeded to a jury trial in November of 2015. The State's evidence at trial came mainly from S.M.'s testimony, material discovered on petitioner's computer, and petitioner's journal seized by police pursuant to a search warrant. The evidence revealed that the relationship between petitioner and S.M. began with the two being friends. S.M. testified that she and petitioner communicated via text messaging until her mother called petitioner using S.M.'s phone and advised him that it was inappropriate for school personnel to have such a relationship with a student. S.M. testified that petitioner then encouraged her to install an application on her device that would enable them to text each other without using a phone and would delete the text messages after a period of time. S.M. could not recall the name of the application, and the police did not discover such an application on S.M.'s or petitioner's phone.

Petitioner's communication with S.M. eventually became sexual. Petitioner indicated a desire to marry S.M.; asked S.M. about her sexual history; indicated a desire to have sex with her; requested oral sex; and referred to S.M. as "slut," "whore," and "Lolita." S.M. testified that petitioner eventually sent her ten to twenty pictures of his penis and videos of him masturbating. He requested that she send him pictures of herself, and she complied by sending pictures of her nude breasts, buttocks, and vagina. According to S.M., these texts were sent between about October of 2013 and January of 2014. The State did not produce the text messages as evidence, but rather, relied on S.M.'s testimony in this regard.

The board of education ultimately learned of the alleged relationship between petitioner and S.M. and conducted an investigation. The investigation revealed e-mails on petitioner's work computer which evidenced petitioner's consultation with a psychic advisor named Jackie Tomlin about his relationship with S.M. The circuit court allowed the State to introduce the e-mails over petitioner's objection.[3] In the e-mails, petitioner referred to S.M. and her boyfriend by name and described a girl who "came into [his] life" and with whom there was "an age difference between [petitioner and the girl]." Petitioner also referred to an occasion when S.M. tried to encourage a blind date between her aunt and petitioner, which had happened around the Summer of 2013. Additionally, in one of the e-mails to Ms. Tomlim, petitioner stated as follows: "I'm facing a possible situation at work that may cost me my job. I haven't hurt anybody. I haven't broken any

---

[2] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.,* 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[3] Prior to trial, petitioner filed a motion in limine to preclude admission of the emails he exchanged with Ms. Tomlin. At a hearing conducted on November 5, 2015, the circuit court indicated that the totality of the e-mails were not relevant. However, the State sought reconsideration, and the circuit court ultimately permitted admission of eighteen e-mails written between January 27, 2014, and April 23, 2014.

laws, however my ethics and morality may be called into question. My actions were inappropriate."

The circuit court also permitted the admission of a journal kept by petitioner that was seized by police pursuant to a search warrant. Petitioner wrote the following:

Your texts scare me knowing you want it all back except for the intimate part. Yet once you texted me during the beginning of the end that you needed to learn how to be intimate with me, maybe that is now. You were, and are, a girl, and I was trying to make you a woman. And I do want it, all of it, with you, only with you. I'd wait forever for you.

Petitioner also wrote, "The woman I love finally approached me. . . . She's so beautiful. And if Jackie is right, which I pray is true, all will work out." The State sought to introduce entries from this journal and petitioner objected on the ground that the entries were not relevant. The circuit court ultimately allowed the State to introduce the above-referenced entries.

Also prior to trial, with respect to Count 5, petitioner disclosed a potential expert witness, Jennifer Parker, a West Virginia-licensed physician's assistant, to testify about the age of the nude females found in pictures on an external hard drive recovered from petitioner's home. The State filed a motion in limine to preclude such testimony on the ground that Ms. Parker was not qualified. The circuit court granted the State's motion, noting that a physician assistant is not qualified to determine the age of an individual on the basis of a photograph.

At the conclusion of the evidence, petitioner was found guilty of the first five counts in the indictment as described above. Petitioner filed post-trial motions requesting reversal of his convictions on Counts 1 through 4 or, in the alternative, a new trial, on the ground that (1) the evidence did not support his conviction because there was no evidence of a surreptitious texting application as testified to by S.M. and (2) that the circuit court erred in admitting the journal entries and petitioner's e-mails to Ms. Tomlin. Petitioner further requested a new trial on Count 5 on the ground that the circuit court improperly suppressed the testimony of Ms. Parker. The circuit court denied petitioner's motions by order entered on January 5, 2016.

By order entered on May 5, 2016, the circuit court sentenced petitioner to serve two concurrent terms of two to ten years in prison for the two counts of soliciting a minor via computer; a determinate sentence of three years, consecutive to the former terms, for his conviction of distribution and display to a minor of obscene matter; a determinate term of two years, consecutive to the former terms, of home confinement for his conviction of use of obscene matter with intent to seduce a minor; and a determinate term of two years in prison, consecutive to the former terms, but suspended the two years of incarceration in lieu of five years of supervised probation, for his conviction of possession of material depicting a minor engaged in sexually explicit conduct. The circuit court also required that petitioner submit to twenty years of intensive supervision upon the fulfillment of his sentence and register as a sexual offender. Petitioner now appeals to this Court.

3

**Discussion**

Petitioner raises eight assignments of error on appeal. In his first assignment of error, petitioner argues that the circuit court should have granted his post-trial motion for judgment of acquittal[4] with respect to Counts 1 through 4 because the evidence failed to prove beyond a reasonable doubt that the crimes occurred. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock,* 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)). This Court has held as follows:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We held further that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *Guthrie.*

---

[4] Rule 29(c) of the West Virginia Rules of Criminal Procedure provides as follows:

If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within ten days after the jury is discharged or within such further time as the court may fix during the ten-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

Petitioner's argument is based, in large part, on the State's inability to introduce the actual text messages he exchanged with the victim and the fact that the State could not locate an application for surreptitious texting on his or S.M.'s phone. However, the record reflects that the board of education initiated its investigation prior to the police seizing petitioner's phone or computer; thus, this fact permitted the inference that petitioner was able to delete the text messages and/or the application. Additionally, the record reflects that, once the police examined petitioner's computer, it discovered a deleted search history that included a search for how to clear information from a computer. Finally, and most damning to petitioner's argument, the jury heard directly from S.M., who testified in detail about petitioner's requests for sex by text message, which supported the convictions on Counts 1 and 2; multiple pictures of petitioner's penis and videos of petitioner masturbating, which supported the conviction on Count 3; and petitioner's request for pictures of S.M. by text message, to which S.M. complied by sending nude pictures of herself to petitioner, which supported the conviction on Count 4. The State was able to corroborate S.M.'s testimony by admitting petitioner's e-mails with Ms. Tomlin and his journal entries, which, as the State argues on appeal, provided a real-time chronicle of petitioner's relationship with S.M. Accordingly, we find no merit to petitioner's argument that he was entitled to a judgment of acquittal.

Petitioner's second, third, fourth, and fifth assignments of error concern the admission of his e-mails with Ms. Tomlin. His sixth assignment of error concerns the admission of his journal entries. Given that the arguments across these assignments of error are related, we address them together.

In his second and third assignments of error, petitioner argues that the circuit court erred by denying his post-trial motion for a new trial based on the admission of e-mails because the e-mails were irrelevant. Petitioner alternatively argues that, if the e-mails were relevant, they were clearly more prejudicial than probative under Rule 403 of the West Virginia Rules of Evidence. In his fourth and fifth assignments of error, he argues that the e-mails were admitted in violation of Rule 404(b) of the West Virginia Rules of Evidence because the circuit court failed to conduct an in camera hearing prior to allowing their admission, or in the alternative, any e-mails dated after the date of the alleged crimes should not have been admitted. Petitioner's sixth assignment of error is that his journal entries should not have been admitted because they were not relevant, or alternatively, they were more prejudicial than probative.

This Court has held that

> [i]n determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990): "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits into the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is

admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted).

*State v. Cyrus*, 222 W. Va. 214, 218, 664 S.E.2d 99, 103 (2008) (citing *State v. LaRock,* 196 W. Va. at 312, n. 29, 470 S.E.2d at 631, n. 29).

Upon our review of the relevant facts and applicable law, we find no error in the admission of petitioner's e-mails with Ms. Tomlin or his journal entries. As the State contends, the e-mails and journal were intrinsic evidence, as opposed to "other bad act" evidence governed by Rule 404(b), because they are "part and parcel" of petitioner's criminal conduct. The e-mails and journal entries were not admitted as evidence of "other bad acts" despite the fact that, as the State points out, they also demonstrated petitioner's intent, motive, knowledge, and opportunity to solicit S.M. into an illegal relationship by asking for sex and exchanging nude photographs. Thus, there was no need for the circuit court to conduct the in camera hearing required for the admission of extrinsic 404(b) evidence.[5] It is beyond cavil that the e-mails and journal entries were damaging to petitioner's defense because they corroborated S.M.'s testimony regarding her communication with petitioner and his solicitation of illicit acts. However, we believe the circuit court properly deemed the e-mails and journal entries to be relevant to the charges and more probative than unfairly prejudicial.

Petitioner presents one other argument in his fifth assignment of error specific to the admission of the e-mails. He contends that the court should have only admitted e-mails that were dated prior to the crimes. Stated another way, petitioner contends that an email sent after an alleged crime is committed cannot be used to show the defendant's intent or motive to commit that crime. Petitioner's argument is illogical. There is nothing about the timing of an e-mail that renders it inadmissible for the purpose of establishing a defendant's intent or motive to commit a crime. For example, a defendant can be accused of committing a robbery on June 1, and send an e-mail on June 5 in which the defendant states that he robbed the victim in order to obtain money for a drug habit. Clearly, the timing of the e-mail would not automatically negate its admissibility. Accordingly, having examined and rejected petitioner's second, third, fourth, fifth, and sixth assignments of error, we conclude that there was no error in the admission of the e-mails with Ms. Tomlin or in the admission of petitioner's journal entries.

In his seventh assignment of error, petitioner argues that the circuit court denied him the opportunity to present witnesses in his defense by granting the State's motion in limine to suppress and/or limit the testimony of his proposed expert witness, Jennifer Parker. As noted above, petitioner intended to call Ms. Parker in his defense of Count 5 to testify that the images

---

[5] *See* Syl. Pt. 2, in part, *State v. McGinnis,* 193 W. Va. 147, 455 S.E.2d 516 (1994) ("Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W. Va. 688, 347 S.E.2d 208 (1986).").

6

found on petitioner's computer did not depict a child, but rather, depicted an adult. This Court has held as follows:

> In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

Syl. Pt. 5, *Gentry v. Mangum*, 195 W. Va. 512, 466 S.E.2d 171 (1995). "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. Pt. 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991).

The record demonstrates that Ms. Parker had been employed as a physician's assistant in general family medicine and neurology medical practices; the circuit court found that she possessed no specialized training or experience in pediatrics or child development that would have enabled her to assist the jury in determining the age of a female based on an image. Accordingly, we find no abuse of discretion by the circuit court in preventing Ms. Parker's testimony.

Petitioner's final assignment of error is that he was prejudiced by the Randolph County Prosecuting Attorney's "shotgunning" of evidence of petitioner's other "bad acts." Petitioner argues that only four of the State's witnesses provided relevant testimony and that the other eight were "simply a continuation of the 'shotgunning' of the evidence of 'other bad acts.'" Upon our review of petitioner's argument, he seems to contend that any witness who referenced to his e-mails or journal entries constituted part of an overzealous prosecution intended to distract the jury with excessive, irrelevant, and prejudicial evidence in the hope that the jury would ignore the weaknesses of the State's case. In petitioner's narrow view, S.M. was the only witness who provided relevant testimony. However, as we have already determined, the circuit court did not err by allowing admission of petitioner's e-mails and journal entries into the record because, as the State argues, they were "intrinsic evidence inextricably intertwined with [p]etitioner's criminal conduct of soliciting a minor and sending/receiving obscene material." Thus, we reject petitioner's final assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 1, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7