# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0456

_____

FILED

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent,

V.

**ALEXANDER PAUL DELORENZO,**
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Marshall County
The Honorable Jeffrey D. Cramer, Judge
Criminal Action No. 21-F-4

**AFFIRMED**

_____

Submitted: September 27, 2022
Filed: November 17, 2022

William E. Galloway, Esq.                     Patrick Morrisey, Esq.
Galloway Law Office                           Attorney General
Weirton, West Virginia                        Michael R. Williams, Esq.
Attorney for the Petitioner                   Senior Deputy Solicitor General
                                              Charleston, West Virginia
                                              Attorneys for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

CHIEF JUSTICE HUTCHISON and JUSTICE WOOTON dissent and may write separately.

# SYLLABUS BY THE COURT

1. "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syllabus point 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S. Ct. 301, 116 L. Ed. 2d 244 (1991).

2. "'The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.' Syl. Pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967)." Syllabus point 2, *State v. Martin*, 224 W. Va. 577, 687 S.E.2d 360 (2009) (per curiam).

3. The trial court has an obligation to all parties to ensure that the trial is conducted in a fair manner. This obligation includes a duty to supervise the direct and cross-examination of each party's witnesses.

4. "'An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus Point 5, *Morgan*

*v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966)." Syllabus point 2, *In re Visitation of L.M.*, 245 W. Va. 328, 859 S.E.2d 271 (2021).

5.    "'The obligation of police to warn a suspect of both his right to counsel and his right against self-incrimination applies only to custodial or other settings where there is a possibility of coercion.' Syl. pt. 2, *State v. Andriotto*, 167 W. Va. 501, 280 S.E.2d 131 (1981)." Syllabus point 5, *State v. Hardway*, 182 W. Va. 1, 385 S.E.2d 62 (1989).

**BUNN, Justice.**

Petitioner Alexander Paul Delorenzo appeals the Circuit Court of Marshall County's May 7, 2021 order sentencing him to five to fifteen years in prison after a jury found him guilty of a single count of unlawfully, knowingly, and willfully sending or causing to be sent and/or possessing material depicting minors engaged in sexually explicit conduct, namely, 600 or more images of minors engaged in sexually explicit conduct or depicting violence against a child, in violation of West Virginia Code § 61-8C-3(a). He raises six issues on appeal. Three of the issues relate to the circuit court's evidentiary rulings, including the circuit court's ruling excluding Mr. Delorenzo's expert witness on Mr. Delorenzo's diagnoses of Autism Spectrum Disorder ("ASD") and Obsessive Compulsive Disorder ("OCD"), the testimony of the State's expert witness, and the visual images introduced by the State. Another claimed error involves the circuit court's denial of his motion to dismiss the superseding indictment or disqualify the prosecutor's office. He further argues the circuit court erred in finding that his statement to law enforcement was voluntary. His final claimed error concerns the circuit court admonishing Mr. Delorenzo to follow the court's rules while he testified before the jury. As explained below, we conclude that the circuit court committed no error and affirm Mr. Delorenzo's conviction.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

In January 2019, the West Virginia State Police discovered an internet protocol ("IP") address using peer-to-peer software share significant amounts of child pornography on the internet. Law enforcement then determined that the IP address was associated with Mr. Delorenzo's physical address and executed a search warrant at his apartment. During the search, law enforcement seized his computer and Mr. Delorenzo participated in an interview.

A Marshall County grand jury indicted Mr. Delorenzo for unlawfully, knowingly, and willfully possessing 600 or more images of minors engaged in sexually explicit conduct on or about February 19, 2019, in violation of West Virginia Code § 61-8C-3(a).[1] Months later, the grand jury returned a superseding indictment, alleging that on or between July 31, 2018, and February 20, 2019, he unlawfully, knowingly, and willfully sent or caused to be sent and/or possessed child pornography, in violation of West

---

[1] West Virginia Code § 61-8C-3(e) defines how videos of a "minor engaged in any sexually explicit conduct" should be counted for the purposes of determining the number of images:

> For purposes of this section each video clip, movie or similar recording of five minutes or less shall constitute seventy-five images. A video clip, movie or similar recording of a duration longer than five minutes shall be deemed to constitute seventy-five images for every two minutes in length it exceeds five minutes.

Virginia Code § 61-8C-3(a). The superseding indictment alleged that there were 600 or more images depicting minors engaged in sexually explicit conduct or images depicting violence against a child. Mr. Delorenzo moved to dismiss the superseding indictment or disqualify the Marshall County Prosecuting Attorney's Office; the circuit court denied his motion.

During the course of the proceedings, Michael J. Marshall, Ph.D, diagnosed Mr. Delorenzo with ASD and OCD. Mr. Delorenzo disclosed Dr. Marshall as an expert witness for trial. As explained in more detail below, the circuit court ultimately precluded Dr. Marshall from testifying at trial because his proffered testimony was "improper and not relevant at the trial of this case."

The State filed a motion to determine voluntariness regarding Mr. Delorenzo's statement to law enforcement, and Mr. Delorenzo filed a motion to suppress that statement. At the hearing on those motions, the circuit court denied Mr. Delorenzo's request to limit the State's cross-examination to the issue of voluntariness during his hearing testimony. After considering the evidence, the circuit court found that the statement was voluntary and permitted the State to introduce the recorded interview at trial.

The case was tried before a jury. The State presented testimony from law enforcement and a digital forensic evidence expert, and introduced evidence of child

3

pornography sent from Mr. Delorenzo's computer, as well as evidence of child pornography found directly on his computer. Mr. Delorenzo testified on his own behalf and offered testimony from his friends and family.

The jury convicted Mr. Delorenzo of the charge in the superseding indictment. The circuit court sentenced him to five to fifteen years imprisonment. This appeal followed. Additional relevant facts are provided below with our discussion of the alleged errors.

## II.

## STANDARD OF REVIEW

Mr. Delorenzo asserts six assignments of error that have different review standards. We will provide the standard of review for each issue in turn. *See State v. Benny W.*, 242 W. Va. 618, 622, 837 S.E.2d 679, 683 (2019) (dispensing with our usual standard of review section because each of the assignments of error had its own review criteria).

## III.

## DISCUSSION

Mr. Delorenzo contends that the circuit court erred by: (1) excluding expert testimony regarding the impact of his ASD and OCD diagnoses on his behaviors, character traits, state of mind, and credibility; (2) failing to dismiss the superseding indictment or

4

disqualify the Marshall County Prosecuting Attorney's Office related to information obtained during a court-ordered mental evaluation; (3) denying his motion to suppress his recorded statement to law enforcement after refusing to limit his cross-examination to voluntariness; (4) permitting the State's digital forensic analyst to testify beyond the scope of her expertise; (5) admitting videos and images from the State's child pornography library not found directly on petitioner's computer; and (6) admonishing Mr. Delorenzo while he testified at trial. We address the first and sixth alleged errors together, as they involve Mr. Delorenzo's diagnoses of ASD and OCD. We will then examine the remaining alleged errors in turn.

### A. Mr. Delorenzo's Diagnoses of Autism Spectrum Disorder and Obsessive Compulsive Disorder

*1. Expert Trial Testimony Regarding Diagnoses.* Mr. Delorenzo first argues that the circuit court erred by preventing Dr. Marshall from testifying at trial regarding Mr. Delorenzo's diagnoses of ASD and OCD. Mr. Delorenzo contends that this testimony would have provided the jury with context regarding his character traits, credibility, and state of mind, as well as an assessment of "his subjective perceptions of what he was doing when he engaged in research on the dark web." He also maintains that the testimony would "rebut the conclusion that because he went on the dark web, he 'knowingly and willfully' sent or possessed child pornography." We find no error in the circuit court's exclusion of Mr. Delorenzo's proffered expert testimony.

The record before this Court relating to Dr. Marshall's expert testimony is limited to two circuit court orders and a transcript of his testimony from the sentencing hearing. The parties failed to include in the appendix any expert reports, expert disclosures, pretrial hearing transcripts, or underlying motions and responses. Unquestionably, the sentencing hearing transcript was not before the circuit court when it ruled that Dr. Marshall could not testify at trial. To the extent that Mr. Delorenzo asks us to consider the sentencing testimony from trial, we decline to do so. When reviewing the trial court's determination to exclude this expert testimony, we are limited to the record before the trial court at the time of its determination, so we will not consider the expert's sentencing testimony when determining whether the trial court erred. *See State v. Campbell*, 246 W. Va. 230, ___, 868 S.E.2d 444, 454 (2022) (refusing to address the voluntariness of a defendant's statement when the circuit court did not address that issue and noting that "[i]n determining whether the circuit court erred in declining to suppress [defendant's recorded statement], we are constrained to consider only arguments and evidence that were before the circuit court at that time."). The facts described here we glean only from those two orders.

In a discovery response, Mr. Delorenzo disclosed that Dr. Marshall would testify at trial regarding Mr. Delorenzo's diagnoses of ASD and OCD. Mr. Delorenzo stated that he anticipated that Dr. Marshall would testify in accordance with his supplemental report that, due to "Mr. Delorenzo's simultaneous presence of two mental

6

disorders, namely ASD and OCD, he will hyper-focus on a topic he is motivated to investigate . . . with a lack of appreciating whether something is right or wrong." The State then moved the court in limine to prohibit the expert's testimony or to have Mr. Delorenzo evaluated pursuant to West Virginia Code § 27-6A-4, which allows a court to require a criminal responsibility or diminished capacity evaluation in certain circumstances.[2] In response to the State's motion, Mr. Delorenzo argued that his expert would testify that he lacked the capacity to form the mens rea to commit the alleged acts, but that he was not presenting a diminished capacity defense.

The circuit court rejected Mr. Delorenzo's argument that he was not presenting a diminished capacity defense as "not well-founded." The court denied the State's motion to exclude Dr. Marshall and found probable cause to believe that Mr. Delorenzo's criminal responsibility or diminished capacity would be a significant factor to his defense. The court ordered the examination requested by the State, and the evaluator determined that Mr. Delorenzo was unable to assert a diminished capacity or lack of criminal responsibility defense.

---

[2] In West Virginia, a diminished capacity defense allows "a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged," although it is usually asserted "when the offense charged is a crime for which there is a lesser included offense." Syl. pt. 3, in part, *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003).

The State again moved the circuit court to prohibit Dr. Marshall's testimony. In its order granting the State's motion, the circuit court explained:

> In the most recent pleadings and at the recent pre-trial hearing, the Defendant has shifted from his initial assertions regarding the nature of Dr. Marshall's testimony to argue that Dr. Marshall will testify as to the defendant's credibility, his subjective perceptions, to explain his conduct, and to assert the defendant was doing "non-criminal research on the dark web." The Court can only assume that if permitted, Dr. Marshall would opine that the Defendant's "research" was "non-criminal" because of his mental diagnoses.

(Footnote omitted).

The circuit court observed in a footnote that Mr. Delorenzo filed no supplemental expert disclosures pursuant to Rule 16(b)(1)(C) of the West Virginia Rules of Criminal Procedure and Rule 32.03(b)(6) of the West Virginia Trial Court Rules.[3] These rules require a defendant to disclose expert material if requested by the State, including "a written summary of expert testimony the defendant intends to use" under Rules 702, 703, and 705 of the West Virginia Rules of Evidence, which relate to expert testimony. W. Va. R. Crim. P. 16(b)(1)(C). This summary must include "the opinions of the witnesses, the bases and reasons therefor, and the witnesses' qualifications." *Id.*

---

[3] Rule 32.03(b)(6) of the West Virginia Trial Court Rules cross-references Rule 16(b)(1)(C) of the West Virginia Rules of Criminal Procedure.

8

The circuit court stated that the proposed expert testimony was "attempting to assert a diminished capacity/lack of criminal responsibility defense, which is unsupported by both the [c]ourt ordered evaluation . . . and Dr. Marshall himself." Ultimately, the circuit court concluded that the proposed expert testimony was "improper and not relevant at the trial of this case."[4]

We review a circuit court's decision to admit or exclude expert testimony under an abuse of discretion standard, typically giving circuit courts a "wide berth" for this type of discretionary judgment. *State v. LaRock*, 196 W. Va. 294, 306, 470 S.E.2d 613, 625 (1996). "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syl. pt. 6, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S. Ct. 301, 116 L. Ed. 2d 244 (1991). *See, e.g.*, Syl. pt. 1, *State v. Lockhart*, 208 W. Va. 622, 542 S.E.2d 443 (2000) (quoting, among other cases, Syl. pt. 6, *Helmick*, 185 W. Va. 269, 406 S.E.2d 700). *See also State v. Black*, 227 W. Va. 297, 308, 708 S.E.2d 491, 502 (2010) (determining that the exclusion of defendant's expert witness testimony was not clearly wrong and was within the "sound discretion of the trial court"). An abuse of discretion generally occurs "'when a material

---

[4] At trial, Mr. Delorenzo, his friends, and his father testified about his personality and his diagnoses of ASD and OCD, including about his "trouble with even people getting close to him," his interest in "heavily" researching topics, his sense of order, and how he could "come off as condescending sometimes."

factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them.'" *LaRock*, 196 W. Va. at 307, 470 S.E.2d at 626 (quoting *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995)).

Mr. Delorenzo argues that the circuit court erred by excluding his expert testimony when Dr. Marshall would have provided testimony regarding the impact of his ASD and OCD diagnoses on his behavior, which he further asserts would be relevant to his character traits, credibility, and mental state. We address each of these types of testimony in turn.

Mr. Delorenzo claims that his expert would "give the jury a context" to evaluate his "character traits" and references traits common to individuals with ASD diagnoses.[5] Mr. Delorenzo has failed to direct this Court to any instance when he raised to

---

[5] While he references the expert's sentencing testimony about the behaviors of individuals diagnosed with ASD that a jury could misunderstand or misinterpret, as we have previously explained, we will not consider the expert's sentencing testimony when determining whether the circuit court erred in excluding the expert's testimony from trial. *See State v. Campbell*, 246 W. Va. 230, ___, 868 S.E.2d 444, 454 (2022).

Still, had he raised the issue of expert testimony relating to his behaviors and personal presentation before the circuit court, this evidence still fails to fit into the confines of admissible expert testimony. Rule 702 of the West Virginia Rules of Evidence permits the admission of expert testimony if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." W. Va. R. Evid. 702(a). There is no "evidence" to understand regarding his personal presentation on the stand, and no "fact in

the circuit court, prior to trial, that his expert would testify regarding his character traits. Instead, Mr. Delorenzo apparently argued to the circuit court before trial that the expert would testify as to Mr. Delorenzo's "credibility, his subjective perceptions, to explain his conduct, and to assert the defendant was doing 'non-criminal research on the dark web.'" Furthermore, no mention of "character trait" evidence appears in either of the circuit court's orders regarding expert testimony. "[W]e are constrained to consider only arguments and evidence that were before the circuit court at that time." *Campbell*, 246 W. Va. at ___, 868 S.E.2d at 454 (refusing to address the voluntariness of the defendant's interview when it was not addressed by the circuit court). Accordingly, because character trait evidence was not addressed by the circuit court, we decline to address whether the circuit court erred by excluding Mr. Delorenzo's expert from testifying regarding his character traits.[6]

---

issue" relating to his testimony or appearance. Sometimes witnesses are argumentative with counsel or the judge. Sometimes they are submissive. A witness may appear selfish and conceited. Witnesses may shift in their seats while testifying, while others stare at the floor. Members of the jury do not leave their common sense at the door when evaluating witnesses. We decline to extend this Rule to allow an expert to explain how such a diagnosis may cause a witness to appear while testifying to a jury. *See State v. Anderson*, 789 N.W.2d 227, 236 (Minn. 2010) (finding, in part, that expert testimony regarding defendant's Asperger's diagnosis (now incorporated into Autism Spectrum Disorder) was not necessary to explain defendant's "behavior, physical abilities, and his testimony" and "whatever probative value the expert testimony would have had, it was substantially outweighed by the danger of confusing the jury.").

[6] Typically, "character trait" evidence has a specific meaning within the West Virginia Rules of Evidence. *See* W. Va. R. Evid. 404. A defendant may offer character traits as evidence *if* they are pertinent to the crime charged. *State v. Benny W.*, 242 W. Va. 618, 632, 837 S.E.2d 679, 693 (2019) (citing W. Va. R. Evid. 404(a)(2)(A)). *See also* Syl.

Mr. Delorenzo also unsuccessfully argues that circuit court erred because the expert testimony was relevant to his credibility. Credibility determinations may not be provided by an expert. *State v. Martin*, 224 W. Va. 577, 582, 687 S.E.2d 360, 365 (2009) (per curiam). "'The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.' Syl. Pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967)." Syl. pt. 2, *Martin*, 224 W. Va. 577, 687 S.E.2d 360. In *Martin*, this Court found that the trial court erred by allowing the State's expert witness to testify that the main prosecution witnesses were "believable and credible." *Id.* at 583, 687 S.E.2d at 366. The only information in the record before this Court is that Mr. Delorenzo asserted to the circuit court in a pleading or at a pretrial hearing that his expert would testify about his credibility. As stated in *Martin*, expert testimony regarding credibility "invade[s] the province of the jury." *Id.* There is nothing in the record to find error on the part of the circuit court by excluding expert testimony relating to Mr. Delorenzo's credibility.

---

pt. 7, *id.* This Court has found, for example, that a defendant's character trait of honesty is not pertinent to a sexual offense charge. Syl. pt. 8, *id.*; *id.* at 632, 837 S.E.2d at 693 (also listing other cases noting non-pertinent traits to specific crimes). Moreover, "[i]n West Virginia a criminal defendant may only use reputation evidence to prove character." Syl. pt. 4, *State v. Gangwer*, 169 W. Va. 177, 286 S.E.2d 389 (1982).

Finally, the circuit court did not err in excluding the expert testimony as it related to Mr. Delorenzo's mental state. On appeal, Mr. Delorenzo now makes an insubstantial argument that the proposed expert testimony about his diagnoses was relevant. He argues that the testimony would "rebut the conclusion" that because Mr. Delorenzo "went on the dark web, he 'knowingly and willfully' sent or possessed child pornography."

Evidence is relevant when "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." W. Va. R. Evid. 401. Expert testimony, like any other type of evidence, must be relevant for a trial court to admit the evidence. *See Black*, 227 W. Va. at 307-08, 708 S.E.2d at 501-02 (upholding circuit court's exclusion of expert testimony regarding false confessions when the court found defendant did not make a confession, only a statement slightly against his interest). Rule 702 of the West Virginia Rules of Evidence permits the admission of expert testimony if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." W. Va. R. Evid. 702(a); *see Lockhart*, 208 W. Va. at 635-36, 542 S.E.2d at 456-57 (explaining that expert testimony regarding a certain mental disorder may be admissible, on a case-by-case basis, when a defendant asserts an insanity defense, but affirming the exclusion of the evidence in the underlying case as the evidence was unreliable and would not have assisted the trier of fact).

Mr. Delorenzo primarily urges us to rely on two cases from outside this jurisdiction to conclude that the circuit court erred in excluding expert testimony about his OCD and ASD diagnoses: *State v. Burr*, 948 A.2d 627 (N.J. 2008), and *State v. Boyd*, 143 S.W.3d 36 (Mo. Ct. App. 2004). Given the facts here, we do not find these cases persuasive. The excluded expert testimony at issue in *Boyd* would have provided the jury with information about why that defendant, with his diagnosis, could not have committed a murder, while the excluded information in *Burr* related to that defendant's abilities and mental state surrounding his interactions with alleged victims. What little information we have to consider regarding the expert testimony and Mr. Delorenzo's mental state fails to link his diagnoses with any limitations on his ability to commit the crime.

While our analysis is limited due to the scarce record, the proposed evidence and Mr. Delorenzo's argument miss an important step in the analysis of whether any of his diagnoses affected his intent to commit the charged crime. The charge in the superseding indictment required the State prove that Mr. Delorenzo *knowingly and willfully* sent, caused to be sent, and/or possessed child pornography. *See* W. Va. Code § 61-8C-3(a). Our record indicates that Mr. Delorenzo told the circuit court that his expert's testimony would address his subjective perceptions and that he was doing "non-criminal research on the dark web."[7]

---

[7] Still, Mr. Delorenzo apparently never updated the initial expert disclosure that Dr. Marshall would testify regarding his "lack of appreciating whether something is

14

The proposed testimony fails to connect his diagnoses to having *any* effect on—much less negating—the mens rea of the alleged crime, *knowingly and willfully* possessing or sending child pornography or his ability to commit the crime as charged. Rather, the expert testimony may have been relevant to explain *why* Mr. Delorenzo would have committed the crime as alleged, or went on the dark web—a more appropriate sentencing argument. The trial court did not abuse its discretion in excluding this expert testimony from trial, as it did not meet the threshold of assisting "the trier of fact to understand the evidence or to determine a fact in issue." *See* W. Va. R. Evid. 702(a).

2. *Admonitions by the circuit court.* The circuit court instructed Mr. Delorenzo to follow its rules when he talked over objections and failed to answer "yes" or "no" questions during cross-examination. Mr. Delorenzo now asserts that the circuit court erred by admonishing him before the jury, unfairly prejudicing him and denying him a fair trial. Mr. Delorenzo again argues that by preventing Dr. Marshall from testifying, in light of the court's admonitions, the jury likely misconstrued Mr. Delorenzo's behavior while testifying as being uncooperative.

During Mr. Delorenzo's direct examination by his defense attorney, the circuit court judge twice instructed him to stop talking over an objection, finally explaining

right or wrong," even after a forensic evaluation determined that he could not assert a diminished capacity defense.

that if "the witness" did not follow the court's rules, his testimony would end.[8] On cross examination, the circuit court also instructed him to answer cross-examination questions with "yes" or "no," or the court would strike his testimony.[9]

---

[8] While we do not have an indication of the length of time Mr. Delorenzo's testimony lasted, the transcript of his direct examination was 72 pages. After Mr. Delorenzo answered a question on direct examination while the court considered an objection by the State, the court instructed him "Mr. Delorenzo, when there's an objection, you need to quit speaking." As the direct examination continued, Mr. Delorenzo continued to answer a question after the court sustained an objection by the State. The court again instructed him, "Mr. Delorenzo, I've sustained the objection. You're not permitted to answer." Mr. Delorenzo responded "I was just making a statement. I'm sorry." The court explained "You're not allowed to just make statements. You have to answer questions." After his direct examination resumed, Mr. Delorenzo spoke over his counsel asking him questions. The circuit court told counsel that "if the witness can't follow the rules of the court, your examination's going to be concluded."

[9] After explaining that the court would strike his testimony and a brief bench conference, the court directed Mr. Delorenzo as follows:

> Mr. Delorenzo, I need to explain to you that right now [the State] is asking you questions that he is looking for particular answers from. Many of the questions he asks are going to be able to be answered with a simple "yes" or "no."
>
> When [the State] is questioning you, you need to make every effort to answer his questions with a simple "yes" or "no." When [defense counsel] has an opportunity to do what's called "redirect examine" you, then if you need to explain one of your answers, he'll go through that with you."

After Mr. Delorenzo indicated that he understood, the court stated, "But with regard to [the State's] questions, if it's a 'yes' or 'no' question, you need to just answer 'yes' or 'no' and leave it at that."

16

This Court reviews the manner of a trial court conducting a trial under abuse of discretion because "a trial judge has broad discretion in managing his or her docket, including trial procedure and the conduct of trial." *State v. Davis*, 232 W. Va. 398, 414, 752 S.E.2d 429, 445 (2013) (per curiam) (quoting *Barlow v. Hester Industries, Inc.*, 198 W. Va. 118, 127, 479 S.E.2d 628, 637 (1996)).

A trial judge must "be extremely cautious not to intimate in any manner by word, tone, or demeanor, his opinion upon any fact in issue." *State v. Thompson*, 220 W. Va. 398, 412, 647 S.E.2d 834, 848 (2007). Still, a court may instruct witnesses to follow the rules of the court. *See People v. Williams*, 558 N.E.2d 1258, 1267 (Ill. App. 1990) (explaining that a trial court instructing a defense expert to answer "yes" or "no" questions "were not attempts to discredit the witness or the defense in general."). In *Thompson*, this Court found that the trial judge "abandoned his role of impartiality and neutrality" during a trial. *Thompson*, 220 W. Va. at 412, 647 S.E.2d at 848. The judge extensively questioned witnesses, asked seven questions of the defendant, and made comments that aided the prosecution. *Id.* at 411-12, 647 S.E.2d at 847-48. This Court then determined that the judge "seriously affected the fairness, integrity, and public reputation of the judicial proceedings." *Id.* at 412, 647 S.E.2d at 848. In contrast, here the trial court instructed Mr. Delorenzo to follow the rules of the proceedings, like the court would any other witness, and explained the consequences of not following those rules. The court did not ask substantive questions of Mr. Delorenzo and matter-of-factly instructed Mr. Delorenzo to

17

adhere to the court's directives. Like the court in *Williams*, these comments were within the court's discretion "and were not attempts to discredit" him or his defense. *See Williams*, 558 N.E.2d at 1267.

A court has "inherent authority to conduct and control matters before it in a fair and orderly fashion." Syl. pt. 2, in part, *State v. Fields*, 225 W. Va. 753, 696 S.E.2d 269 (2010). The trial court has an obligation to all parties to ensure that the trial is conducted in a fair manner. This obligation includes a duty to supervise the direct and cross-examination of each party's witnesses. Mr. Delorenzo's diagnoses do not alter the trial court's ability to manage the courtroom, and the transcripts do not reveal that the judge was in any way prejudicial or inappropriate in his instructions to Mr. Delorenzo to follow the rules that all witnesses must follow when testifying. For these reasons, we find that the circuit court did not abuse its discretion in instructing Mr. Delorenzo to follow the rules of the circuit court during his trial testimony.

### B. Mr. Delorenzo's Motion to Dismiss the Superseding Indictment or Disqualify the Prosecuting Attorney's Office

We now turn to Mr. Delorenzo's argument that the circuit court erred by failing to dismiss the superseding indictment or disqualify the Marshall County Prosecuting Attorney's Office. He alleges, without citation to the record, that he provided information regarding attorney-client privileged trial strategy to the court-appointed mental

18

health evaluator; that this information was then turned over to the prosecutor; that this information was the basis for the superseding indictment; and that this information could have been redacted by the court before being sent to the prosecutor. The only evidence in the appendix for this Court for review in connection with this assignment of error is the circuit court's four sentence order denying Mr. Delorenzo's motion to dismiss the indictment or, in the alternative, to disqualify the prosecutor's office.

"[T]he responsibility and burden of designating the record is on the parties and [] appellate review must be limited to those issues which appear in the record presented to this Court." *State v. Honaker*, 193 W. Va. 51, 56, 454 S.E.2d 96, 101 (1994) (footnote omitted). We recently took as "'non[-]existing all facts that do not appear in the [appendix] record.'" *See Hairston v. W. Va. Dep't of Health & Hum. Res. Bd. of Rev.*, No. 20-0326, 2021 WL 982643, at *3 n.3 (W. Va. Mar. 16, 2021) (memorandum decision) (alteration in original) (quoting *Honaker*, 193 W. Va. at 56 n.4, 454 S.E.2d at 101 n.4, and changing the reference from "designated record" to "appendix."). As we have explained,

> "[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syllabus Point 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966).

Syl. pt. 2, *In re Visitation of L.M.*, 245 W. Va. 328, 859 S.E.2d 271 (2021). Accordingly,

based on the lack of a record before this Court, with only Mr. Delorenzo's argument in his

brief and a short order denying his motion, we will not find error in the circuit court's denial

of Mr. Delorenzo's motion.

### C. Mr. Delorenzo's Voluntary Statement to Law Enforcement

Mr. Delorenzo contends that the trial court erred in determining that his

recorded statement to law enforcement was voluntary. He also claims that the circuit court

erred because it refused to allow him to testify on the issue of voluntariness without being

subject to cross-examination on other matters at a pretrial hearing.

According to the record on appeal,[10] when law enforcement arrived at Mr.

Delorenzo's apartment, all wearing plain clothes, they informed him they had a search

---

[10] The record consists of the circuit court order finding Mr. Delorenzo's statement voluntary and the transcript of the pretrial hearing. The parties did not include underlying motions and responses in the appendix. To the extent that Mr. Delorenzo asks us to consider his trial testimony that he felt confused, anxious, and in a state of panic during the search to revisit the circuit court's ruling on voluntariness, we refuse.

While a trial court may reconsider suppression determinations if new facts come out at trial, Mr. Delorenzo did not request the circuit court do so. *See State v. Farley*, 192 W. Va. 247, 253 n.7, 452 S.E.2d 50, 56 n.7 (1994) ("Because the defendant did not renew his motion to suppress at trial, specifically after he had testified, he is now foreclosed from using trial testimony to challenge the trial court's ruling."). The trial court was not required to review its suppression determination at trial without a motion. *See id*. Without a renewed motion to suppress at trial, Mr. Delorenzo may not now use his trial testimony to refute the circuit court's pretrial decision. *See id*.

20

warrant. During the search, Detective Rob Safreed ("Det. Safreed") from the Wheeling Police Department asked Mr. Delorenzo to sit at the kitchen table so he could speak with him while the other two officers searched the apartment pursuant to the warrant. Det. Safreed conducted the thirty-five minute interview there, using a recorder, and was the only person to question Mr. Delorenzo. No one handcuffed Mr. Delorenzo during the search or the interview. Mr. Delorenzo was not arrested on the day of the search and stayed in his apartment after law enforcement concluded the search.

Upon motions by both parties, the circuit court held a pretrial hearing relating to the voluntariness of the statement Mr. Delorenzo gave to Det. Safreed. At the hearing, only Det. Safreed testified on behalf of the State. Det. Safreed explained to the circuit court that he read Mr. Delorenzo his *Miranda* rights from a card he usually carried in his portfolio before he started questioning him. Det. Safreed confirmed that he advised Mr. Delorenzo that he was not under arrest. Det. Safreed explained that Mr. Delorenzo "would have said that he did understand [his rights] because we had an interview." Det. Safreed did not have

---

Our general rule is that nonjurisdictional questions raised for the first time on appeal will not be considered. *See* Syl. pt. 2, *Sands v. Security Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance."). Nevertheless, "[a] constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case." Syl. pt. 2, *Louk v. Cormier*, 218 W. Va. 81, 622 S.E.2d 788 (2005). Upon examination, this Court does not find Mr. Delorenzo's argument dispositive. Therefore, we decline to address any alleged error.

Mr. Delorenzo sign a waiver of his *Miranda* rights. Det. Safreed said that he may not have told Mr. Delorenzo he was free to leave, as he wanted Mr. Delorenzo to witness the search of his apartment, but he did not specifically tell Mr. Delorenzo that he could not leave his house. Had Mr. Delorenzo told him he was leaving, he would have allowed him to leave.

Det. Safreed explained that he recorded the interview, but due to a new recorder, did not realize that the recording did not include the reading of those rights and the subsequent agreement from Mr. Delorenzo that he understood them. He estimated approximately three minutes of the interview were not recorded, including the portion where he provided Mr. Delorenzo with his *Miranda* warning.[11]

Mr. Delorenzo did not offer any testimony or evidence at the pretrial hearing other than cross-examination of Det. Safreed. In contemplation of his own testimony at the hearing, Mr. Delorenzo requested that the circuit court limit his cross-examination to only the voluntariness of his statement. The circuit court invited counsel to provide a basis for such a limitation on cross-examination, which counsel did not do. Mr. Delorenzo further

---

[11] While Sgt. Safreed earlier testified at the initial preliminary hearing that he did not realize that the recorder failed to work until he *listened* to the recording, at the hearing he testified that he realized the error *during* the interview. He explained the discrepancy in his testimonies by stating that he forgot about the recorder not working at the preliminary hearing because the hearing occurred eleven months after the interview. He also explained that he reported that the recorder did not record in the narrative in his police report that he created shortly after the interview.

did not provide any reason why cross-examination was unjust. The circuit court denied his motion and Mr. Delorenzo did not testify.

After considering testimony from Det. Safreed and reviewing the audio statement, the circuit court issued an order finding that the statement was voluntary, made with "full knowledge of his *Miranda* rights after being advised of the same," and that, in any event, Mr. Delorenzo was not in custody at the time he made his statements so his "arguments relating to spoliation of evidence of the defendant being [M]irandized (or not) are irrelevant and moot."

*1. Scope of Cross-examination at the Pretrial Hearing.* We first address the alleged error regarding Mr. Delorenzo's motion at the pretrial hearing to testify without being subject to cross-examination outside the scope of voluntariness. Before this Court or the circuit court, Mr. Delorenzo failed to supply any rules or law in support of his argument that the circuit court should have granted his motion. West Virginia Rule of Appellate Procedure 10(c)(7) requires a petitioner to "clearly exhibit[] the points of fact and law presented" and to "cit[e] the authorities relied on[.]" Citing to "some of the facts involved with an issue" does not meet the requirements of Rule 10(c)(7). *Benny W.*, 242 W. Va. at 632 n.23, 837 S.E.2d at 693 n.23. The circuit court specifically provided Mr. Delorenzo the opportunity to provide relevant authority for his request and he provided none. He has not provided this Court with any relevant authority, either. Mr. Delorenzo's argument, both

23

here and before the circuit court, is "a skeletal argument, really nothing more than an assertion" and "does not preserve a claim."[12] *See State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (internal quotations and citations omitted). Mr. Delorenzo's limited argument both here and before the circuit court does not preserve a claim. We refuse to address his argument that the circuit court erred by denying his motion to testify with only limited cross-examination.

*2. Mr. Delorenzo's Voluntary Statement.* We next examine whether the circuit court erred in determining that Mr. Delorenzo's statement to Det. Safreed was voluntary. Mr. Delorenzo appears to argue that no evidence shows that Mr. Delorenzo was read and understood his *Miranda* rights, because only Det. Safreed testified that he read Mr. Delorenzo his *Miranda* rights. The State asserts that Mr. Delorenzo was not in custody, and therefore Det. Safreed had no duty to give Mr. Delorenzo any *Miranda* warnings, and

---

[12] Rule 104(d) of the West Virginia Rules of Evidence governs cross-examination of a defendant on a preliminary question. W. Va. R. Evid. 104(d) ("By testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case."). As we have explained many times, "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. pt. 2, *Sands v. Sec. Tr. Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958). Had he named this Rule in his brief and claimed an error in its application by the circuit court to this Court, we still would not review whether the circuit court erred in the application of Rule 104(d), as Mr. Delorenzo did not submit any testimony for which he could be cross-examined and the Rule subsequently violated.

in any event, the circuit court determined that Det. Safreed's testimony that he read Mr. Delorenzo his *Miranda* rights was credible. We agree with the State.

"We apply an abuse of discretion standard of review to a circuit court's decision on the admissibility of a confession." *Campbell*, 246 W. Va. at ___, 868 S.E.2d at 451. A trial court "has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." Syl. pt. 2, in part, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978). "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 3, *id.* Moreover, "factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994) (regarding the standard of review for suppression motions).

Yet, we apply a de novo review when determining whether "'a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination,'" limiting our deference to factual findings. *Campbell*, 246 W. Va. at ___, 868 S.E.2d at 451 (quoting Syl. pt. 2, in part, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994)). "[T]he prosecution must show by 'affirmative evidence' as a condition precedent to its admissibility that the voluntariness of a confession is established by a preponderance of the evidence." *Farley*, 192 W. Va. at 252, 452 S.E.2d at 55.

25

Additionally, "[i]n circumstances where a trial court admits a confession without making specific findings as to the totality of the circumstances, the admission of the confession will nevertheless be upheld on appeal, but only if a reasonable review of the evidence clearly supports voluntariness." Syl. pt. 3, *Farley*, 192 W. Va. 247, 452 S.E.2d 50.

Law enforcement officers must provide *Miranda* warnings, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), when a person is in custody and is interrogated. *Campbell*, 246 W. Va. at ___, 868 S.E.2d at 451. "'The obligation of police to warn a suspect of both his right to counsel and his right against self-incrimination applies only to custodial or other settings where there is a possibility of coercion.' Syl. pt. 2, *State v. Andriotto*, 167 W. Va. 501, 280 S.E.2d 131 (1981)." Syl. pt. 5, *State v. Hardway*, 182 W. Va. 1, 385 S.E.2d 62 (1989). Thus, if a person is not in custody or in a setting "where there is a possibility of coercion," law enforcement officers do not have to provide *Miranda* warnings before questioning a person. *See id.*

Whether a person is in custody is an "'objective test'" where the court must consider, in the totality of the circumstances, whether "'a reasonable person in that individual's position would have considered his freedom of action restricted to the degree associated with a formal arrest.'" *Campbell*, 246 W. Va. at ___, 868 S.E.2d at 452 (quoting *State v. McCracken*, 218 W. Va. 190, 195, 624 S.E.2d 537, 542 (2005) (per curiam)). When

26

determining the factual question of whether a person is subject to a custodial interrogation, the factors the circuit court must consider include:

> the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.[13]

Syl. pt. 4, in part, *Damron v. Haines*, 223 W. Va. 135, 672 S.E.2d 271 (2008) (per curiam). In *State v. Singleton*, we affirmed a trial court's determination that a person was not in custody when her interview took approximately forty minutes, so was "not lengthy;" she was not handcuffed, detained or "otherwise restrained;" she was allowed to leave for work; officers advised her that she was not under arrest; and she was seated in the front seat of a police car. 218 W. Va. 180, 186 & n.11, 624 S.E.2d 527, 533 & n.11 (2005) (per curiam).

Based on the facts presented at the pretrial hearing, we will not disturb the circuit court's conclusion that Mr. Delorenzo was not in custody when he gave his statement to Det. Safreed. Mr. Delorenzo was in his home with three plain-clothed law enforcement officers, which was not an overwhelming number of individuals, while they executed a search of his apartment. Mr. Delorenzo's apartment was a neutral setting. *See United States v. Hargrove*, 625 F.3d 170, 180 (4th Cir. 2010) (explaining that a suspect's

---

[13] These factors are not all-inclusive. *See* Syl. pt. 4, in part, *Damron v. Haines*, 223 W. Va. 135, 672 S.E.2d 271 (2008) (per curiam).

residence is a more "neutral" and "relaxed" environment than is typically associated with formal arrest). Mr. Delorenzo and Det. Safreed sat at the kitchen table during the interview. Furthermore, Det. Safreed told him he was not under arrest. The officers did not handcuff him, restrain him, or restrict his freedom to depart. Like the interview in *Singleton*, Mr. Delorenzo's conversation with Det. Safreed was "not lengthy," approximately thirty-five minutes. *See* 218 W. Va. at 186, 624 S.E.2d at 533. Law enforcement did not arrest him at or immediately following the search of his apartment. Based upon these facts, Mr. Delorenzo was not in custody during the interview and the record presents no evidence of coercion. Because it was not a custodial interrogation, law enforcement did not have to provide *Miranda* warnings to him.

Further, to the extent that the circuit court found that Det. Safreed provided *Miranda* warnings to Mr. Delorenzo, we will not alter the circuit court's finding. *See* Syl. pt. 3, in part, *Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (giving "great deference" to factual findings based at least in part on witness credibility). Mr. Delorezo argues that Det. Safreed's testimony was "unsubstantiated." Still, Det. Safreed testified extensively regarding the warnings he provided Mr. Delorenzo, and Mr. Delorenzo's understanding of those warnings. The circuit court clearly found Det. Safreed credible when it determined that Det. Safreed provided *Miranda* warnings to Mr. Delorenzo, as its only evidence was Det. Safreed's testimony and the recorded statement itself. We will not disturb this finding.

28

Having determined that Mr. Delorenzo was not in custody, yet still received *Miranda* warnings, we now turn to whether his statement was voluntary. While the circuit court did not make "specific findings as to the totality of the circumstances," our review of the evidence "clearly supports [the] voluntariness" of Mr. Delorenzo's statement. *See* Syl. pt. 3, in part, *Farley*, 192 W. Va. 247, 452 S.E.2d 50. For the same reasons that support our finding that Mr. Delorenzo was not in custody, we find that the State proved by a preponderance of the evidence that Mr. Delorenzo's statement was voluntary.

For the foregoing reasons, we find that the circuit court did not abuse its discretion by denying Mr. Delorenzo's motion to suppress and admitting his recorded statement into evidence at trial.

### D. Testimony by the State's Digital Forensic Analyst.

We now turn to Mr. Delorenzo's contention that the State's digital forensic computer analyst, an uncontested expert, testified outside of her expertise at trial and the circuit court plainly erred by allowing this testimony. We disagree.

Before trial, the State disclosed the resume of Ginger Haring ("Ms. Haring") the State's digital forensic computer analyst, to Mr. Delorenzo. Her resume included information that as a digital forensic analyst, she performed "thorough examinations of computer hard disk drives and electronic data storage media." Her resume also listed her

29

credential as a Certified Cyber Crime Examiner. At trial, Ms. Haring described her background and disclosed she had a degree in network administration and cyber security/computer forensics. She explained the evidence she found on Mr. Delorenzo's computer and explained how she reviewed that evidence.

During her testimony, the State asked her whether she spoke with Mr. Delorenzo's counsel. She responded that she had on more than one occasion, and she reported that at one point, he asked her whether it was possible that someone could have used Mr. Delorenzo's computer as a server without his knowledge. She told the jury that she told Mr. Delorenzo's counsel it was possible, but not probable. She then explained that

> it's possible for any home computer to be -- to be gotten into and used. However, most of the time when that's the case, there's a monetary -- they're looking for monetary reasons to do it. They want your identity. They want your bank numbers. They want your credit card numbers. In most cases that is more what it's for, is for monetary gain.

She confirmed that it was not typical that people put pornography on someone else's computer and then delete it. Mr. Delorenzo did not object at trial during her direct testimony. On cross-examination, Mr. Delorenzo's attorney revisited the issue with Ms. Haring, asking her whether she spoke with him. He asked her whether a cybercriminal could have gained access to the defendant's computer. Ms. Haring responded that "Again, it is possible; it is not probable. That is not a likely scenario, but it's -- it is possible."

Generally, pursuant to Rule 103(a) of the West Virginia Rules of Evidence, to preserve a claim of error, a party must "timely" object to the admission of evidence, stating the "the specific ground" of the objection "unless it was apparent from the context." W. Va. R. Evid. 103(a). *See State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996) (discussing the failure to object to evidence at trial). Because Mr. Delorenzo did not raise this issue during Ms. Haring's testimony, it is unpreserved, and any analysis must use a plain error review. *See* Syl. pt. 6, *State v. Mayo*, 191 W. Va. 79, 443 S.E.2d 236 (1994); W. Va. R. Crim. P. 52(b) (explaining that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). *See also* W. Va. R. Evid. 103(e) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.").

A "plain error" occurs when there is "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). If the first three elements are met, we may correct the error, but need not do so "unless a fundamental miscarriage of justice has occurred." *Marple*, 197 W. Va. at 52, 475 S.E.2d at 52.

Mr. Delorenzo asserts that part of Ms. Haring's testimony on direct examination meets the threshold for plain error because Ms. Haring was not qualified to

testify as a criminologist about the following issues: (1) that it is not typical that someone would place pornography on someone else's home computer without the owner's knowledge; and (2) when people intrude on others' computers, it is usually for monetary reasons. Mr. Delorenzo claims, without citation, that the circuit court allowing an expert to testify outside the scope of her expertise was an "egregious act" that "constitute[ed] plain error." He fails to provide *any* legal authority that demonstrates that permitting Ms. Haring's contested testimony was error at all, merely alleging that her "central role" in the trial led the jury to give "a great deal of credence to her testimony."

We find no error in allowing this testimony, much less that "the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect." *See LaRock*, 196 W. Va. at 317, 470 S.E.2d at 636 (discussing standard for finding plain error). Ms. Haring had degrees in network administration and cyber security/computer forensics; as part of her employment, she performed examinations of computers and electronic storage media; and she was a Certified Cyber Crime Examiner. Testifying about the criminal use of computers appears within her area of expertise. Moreover, rather than objecting to Ms. Haring's direct testimony, on cross-examination Mr. Delorenzo's counsel revisited the issue, eliciting yet again that it was possible someone placed child pornography on Mr. Delorenzo's computer. We do not find such testimony is error, much less plain error.

32

### E. Visual Evidence the State Introduced at Trial

Finally, Mr. Delorenzo asserts two errors relating to the videos and photographs presented to the jury at trial. He argues that the circuit court should have prevented the State from presenting evidence from the State's library of child pornography because it was "unnecessary" for the State to present this evidence, as "the images were not on his computer" when it was seized and "if the images appeared on his computer at any time before the computer was seized it was not accomplished through his knowing and willful act." He also contends that the circuit court erred by playing videos "for an unnecessary length of time," alleging for the first time in this appeal that the circuit court admitted needlessly cumulative and unfairly prejudicial evidence, in violation of Rule 403 of the West Virginia Rules of Evidence.

Sergeant James Kozik ("Sgt. Kozik") from the West Virginia State Police testified at trial on behalf of the State, explaining that the State has a "hash library" of known child exploitation materials that provides each file's "hash value," a mathematical algorithm that is the precise "DNA fingerprint of the file." He described his investigation, where he used a computer program to find an IP address sharing voluminous files with some of those known hash values over the internet.[14] He then matched those files' hash values with copies of identical files from the State's library of child exploitation. Sgt. Kozik

---

[14] Another law enforcement witness ultimately testified that the IP address at issue was associated with Mr. Delorenzo's residential address.

placed copies of those identical files on data storage materials and the State introduced those videos and photographs into evidence at trial. Mr. Delorenzo objected to the introduction of those files on the grounds that they came from the State's library, not from his computer.

The admissibility of evidence is "'committed to the discretion of the trial court,'" and with few exceptions, this Court reviews "'evidentiary . . . rulings of the circuit court under an abuse of discretion standard.'" Syl. pt. 1, in part, *State v. Gray*, 204 W. Va. 248, 511 S.E.2d 873 (1998) (per curiam) (quoting Syl. Pt. 1, in part, *McDougal v. McCammon,* 193 W. Va. 229, 455 S.E.2d 788 (1995)). *See also* Syl. pt. 9, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998) (quoting Syl. pt. 1, *Roberts v. Stevens Clinic Hospital, Inc.*, 176 W. Va. 492, 345 S.E.2d 791 (1986)) ("'A trial court is afforded wide discretion in determining the admissibility of videotapes and motion pictures.'").

Mr. Delorenzo's argument that the contested visual evidence was not on his computer and was therefore unnecessary to present to jury is without merit. The State correctly points out that it has a right to present evidence of essential elements of crimes. *See State v. Less*, 170 W. Va. 259, 264, 294 S.E.2d 62, 66 (1981) ("The State must prove all the elements of a crime beyond a reasonable doubt."). The credibility of evidence is "for the trier of fact to determine." *State v. Jenkins*, 195 W. Va. 620, 626, 466 S.E.2d 471, 477 (1995). The State's burden included proving to the jury the number of images charged in

the superseding indictment, which alleged that Mr. Delorenzo unlawfully, knowingly, and willfully sent or caused to be sent and/or possessed child pornography, including 600 or more images depicting minors engaged in sexually explicit conduct or images depicting violence against a child. *See* W. Va. Code § 61-8C-3(b)-(d) (increasing penalties for a violation of § 61-8C-3(a) depending on the number and type of images); § 61-8C-3(e) (defining how images are counted for the purposes of the statute, with five-minute videos equaling 75 images, with each additional two minutes adding 75 more images). The jury heard testimony from Sgt. Kozik that the videos and images sent over the internet from Mr. Delorenzo's IP address matched child pornography in the State's library. This evidence directly related to the superseding indictment that alleged Mr. Delorenzo *sent or caused to be sent* child pornography. Mr. Delorenzo stating that this evidence is "unnecessary" is not grounds for limiting the State's evidence to visual images found only on Mr. Delorenzo's computer and hard drives. Whether Mr. Delorenzo knowingly and willfully sent, caused to be sent, and/or possessed those images were properly a question of fact for the jury. The circuit court did not abuse its discretion in admitting evidence of child pornography from the State's library rather than only evidence retrieved directly from Mr. Delorenzo's computer seized by the State.[15]

---

[15] The State's evidence also included child pornography found on his computer. Ms. Haring testified about her examination of Mr. Delorenzo's computer and hard drives and the numerous child-suspicious videos and items she found on them. She further explained she found files identified as child pornography that had been deleted from the "recycle bin" on Mr. Delorenzo's computer. The State showed evidence from that

Mr. Delorenzo also now argues that the trial court should have applied Rule 403 of the West Virginia Rules of Evidence to preclude the admission of some of the videos and photographs because they were unfairly prejudicial and needlessly cumulative. Rule 103(a)(1) of the West Virginia Rules of Evidence explains that a party may claim error relating to the admission of evidence if the party timely objects and "states the specific ground, unless it was apparent from the context."

Mr. Delorenzo objected to this evidence at trial, but on the grounds that the images were from the State's library. Because he did not raise any objections under Rule 403, these arguments are waived. *See State v. DeGraw*, 196 W. Va. 261, 271-72, 470 S.E.2d 215, 225-26 (1996) (declining to address whether trial court improperly admitted evidence that allegedly violated Rule of Evidence 404(b) where the party only objected to the evidence on the grounds that it violated Rule of Evidence 609). As such, Mr. Delorenzo's assignments of error regarding the admission of various pictures and videos into evidence fail.

---

computer to the jury. While she was unable to see the search history from Mr. Delorenzo's web browser, she identified browser activity from known child pornography sites.

## IV.

## CONCLUSION

Finding no reversible error for the reasons stated above, we affirm the final order from May 7, 2021, of the Circuit Court of Marshall County.

Affirmed.